IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

COREY J. BEDTKA,

  Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,[1]

  Defendant.

No. C13-1005

RULING ON JUDICIAL REVIEW

TABLE OF CONTENTS

I.  INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.  PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . 2

III.  PRINCIPLES OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV.  FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
  A.  Bedtka's Education and Employment Background . . . . . . . . . . . . 5
  B.  Administrative Hearing Testimony . . . . . . . . . . . . . . . . . . . . 5
    1.  Bedtka's Testimony . . . . . . . . . . . . . . . . . . . . . . . 5
    2.  Vocational Expert's Testimony . . . . . . . . . . . . . . . . . 6
  C.  Bedtka's Medical History . . . . . . . . . . . . . . . . . . . . . . . . 7

V.  CONCLUSIONS OF LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
  A.  ALJ's Disability Determination . . . . . . . . . . . . . . . . . . . . . 9
  B.  Objections Raised By Claimant . . . . . . . . . . . . . . . . . . . . . 12
    1.  RFC Determination . . . . . . . . . . . . . . . . . . . . . . . 12
    2.  Dr. Nepola's Opinions . . . . . . . . . . . . . . . . . . . . . 14

---

[1] Plaintiff originally filed this case against Michael J. Astrue, the Commissioner of Social Security Administration ("SSA"). On February 14, 2013, Carolyn W. Colvin became Commissioner of the SSA. The Court, therefore, substitutes Commissioner Colvin as the Defendant in this action. FED. R. CIV. P. 25(d)(1).

  *C.* ***Reversal or Remand*** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*VI.* *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*VII.* *ORDER* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

## *I. INTRODUCTION*

This matter comes before the Court on the Complaint (docket number 4) filed by Plaintiff Corey J. Bedtka on February 21, 2013, requesting judicial review of the Social Security Commissioner's decision to deny his applications for Title II disability insurance benefits and Title XVI supplemental security income ("SSI") benefits. Bedtka asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide him disability insurance benefits and SSI benefits. In the alternative, Bedtka requests the Court to remand this matter for further proceedings.

## *II. PROCEDURAL BACKGROUND*

On September 30, 2011, Bedtka applied for both disability insurance benefits and SSI benefits. In his applications, Bedtka alleged an inability to work since May 7, 2011 due to shoulder and leg injuries sustained in a motorcycle accident. Bedtka's applications were denied on November 14, 2011. On April 13, 2012, his applications were denied on reconsideration. On May 11, 2012, Bedtka requested an administrative hearing before an Administrative Law Judge ("ALJ"). On November 26, 2012, Bedtka appeared via video conference with his attorney before ALJ David G. Buell for an administrative hearing. Bedtka and vocational expert Julie A. Svec testified at the hearing. In a decision dated December 6, 2012, the ALJ denied Bedtka's claims. The ALJ determined that Bedtka was not disabled and not entitled to disability insurance benefits or SSI benefits because he was functionally capable of performing work that exists in significant numbers in the national economy. Bedtka appealed the ALJ's decision. On February 5, 2013, the Appeals

2

Council denied Bedtka's request for review. Consequently, the ALJ's December 6, 2012 decision was adopted as the Commissioner's final decision.

On February 21, 2013, Bedtka filed this action for judicial review. The Commissioner filed an Answer on April 25, 2013. On May 28, 2013, Bedtka filed a brief arguing that there is not substantial evidence in the record to support the ALJ's finding that he is not disabled and that he is functionally capable of performing work that exists in significant numbers in the national economy. On July 25, 2013, the Commissioner filed a responsive brief arguing that the ALJ's decision was correct and asking the Court to affirm the ALJ's decision. On August 5, 2013, Bedtka filed a reply brief. On March 25, 2013, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

### III. PRINCIPLES OF REVIEW

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review. 42 U.S.C. § 405(g). Pursuant to 42 U.S.C. § 1383(c)(3), the Commissioner's final determination after an administrative hearing not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3). Title 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court will "affirm the Commissioner's decision if supported by substantial evidence on the record as a whole." *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012) (citation omitted). Substantial evidence is defined as "'less than a preponderance but . . . enough that a reasonable mind would find it adequate to support the conclusion.'"

*Id.* (quoting *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010)); *see also Brock v. Astrue*, 674 F.3d 1062, 1063 (8th Cir. 2010) ("Substantial evidence is evidence that a reasonable person might accept as adequate to support a decision but is less than a preponderance.").

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Buckner v. Astrue*, 646 F.3d 549 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 556 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing *Chamberlain v. Shalala*, 47 F.3d

1489, 1493 (8th Cir. 1995)); *see also Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) ("If substantial evidence supports the ALJ's decision, we will not reverse the decision merely because substantial evidence would have also supported a contrary outcome, or because we would have decided differently."); *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005).").

## IV. FACTS

### A. Bedtka's Education and Employment Background

Bedtka was born in 1979. He completed the the tenth grade in school. Later, he earned his GED. At the administrative hearing, Bedtka testified that he had difficulty in school, particularly in math. He also testified that at the time of the hearing he was enrolled in classes at a community college. Bedtka stated that he was working toward an associate's degree. In explaining his reasoning for attending community college, Bedtka stated that "my plan would be to [do] -- something that I don't have to use -- I've always done physical labor. My body just can't do it so I'm trying to figure out some kind of -- I don't know if it's office work or whatever[.]"[2]

The record contains a detailed earnings report for Bedtka. The report covers the time period from 1994 to 2012. Bedtka had minimal earnings (less than $100) from 1994 to 1997. Beginning in 1998 and continuing through 2011, Bedtka earned between $10,054.06 (1998) and $43,015.50 (2010). He has no earnings since 2012.

### B. Administrative Hearing Testimony

#### 1. Bedtka's Testimony

In May 2011, Bedtka injured his left shoulder and left leg in a motorcycle accident. He has undergone multiple surgeries on his shoulder and leg. At the administrative

---

[2] Administrative Record at 60.

hearing, Bedtka testified that he has continual pain in his left shoulder. He also reported "a lot" of pain in his left knee. Bedtka stated that he refuses to use pain medication because "I've seen with pain medication, you know, used over a long period of time, [what it] does to people and I don't want nothing to do with that[.]"[3] Bedtka explained that he rests his shoulder and leg and sometimes uses over-the-counter medication like aspirin or ibuprofen to bring down inflammation.

Bedtka's attorney questioned Bedtka about his functional limitations associated with his left knee:

> Q: You talked a little bit before about, you know, walking and standing. What's the farthest you think you can walk at a given time without using a cane or anybody helping you? How far do you think you can walk?
> A: It varies. Like I said, it -- my knee just gives out. My leg just pretty much gives out, but I'm kind of -- I can -- I can walk a block. You know, that -- you know, but I -- it's there's always pain there, but it just gets progressively worse the more I do even the simplest things.
> Q: How long can you sit at a given time?
> A: I'm always having to move, you know, reposition my knee and it just -- at all times it feels swollen and, like, pressure. So I'm just trying to get that feeling out of there, but, you know, as long as I can move my knee around and reposition myself I could -- you know, a half hour or so before I get up and actually stretch it.

(Administrative Record 48-49.)

### 2. *Vocational Expert's Testimony*

At the hearing, the ALJ provided vocational expert Julie A. Svec with a hypothetical for an individual who:

---

[3] *Id.* at 47.

6

> is limited to performing light work, has some non-exertional limits, namely, can crouch and kneel only occasionally, cannot climb ladders, ropes, or scaffolds at all, and -- well, let's -- let me just say can't be exposed to hazards such as work at unprotected heights and cannot work in cold temperatures, so let's just say need to work indoors in a climate controlled environment. And then, I want you to assume that this worker cannot use the non-dominant left upper extremity to reach overhead at all and can use that extremity to reach in other directions no more than occasionally.

(Administrative Record at 63-64.) The vocational expert responded that limiting Bedtka to occasional use of his left arm would preclude both light and sedentary work. The ALJ changed the hypothetical to allow frequent use of the left upper extremity in all reaching except overhead reaching, and the vocational expert opined that with frequent use of the left upper extremity, Bedtka could perform the following light work: (1) office helper (2,000 positions in Iowa and 260,000 positions in the nation), (2) cleaner (1,300 positions in Iowa and 200,000 positions in the nation), and (3) ticket taker (600 positions in Iowa and 35,000 positions in the nation).

### C. Bedtka's Medical History

On May 1, 2011, Bedtka was involved in a motorcycle accident, injuring his left shoulder and left leg. Specifically, Bedtka had fractures of the humerus, tibia, and fibula bones. On May 2, 2011, Bedtka underwent surgery to repair his shoulder and leg injuries. He was discharged from the hospital on May 4, 2011. In the three months following his surgery, medical records provide that Bedtka's fractures were healing well.[4]

On June 20, 2011, Dr. Laura Griffith, D.O., reviewed Bedtka's medical records and provided Disability Determination Services ("DDS") with a physical residual functional capacity ("RFC") assessment for Bedtka. Dr. Griffith determined that Bedtka could: (1) occasionally lift and/or carry 50 pounds, (2) frequently lift and/or carry

---

[4] *See* Administrative Record at 394-404.

7

25 pounds, (3) stand and/or walk with normal breaks for a total of about six hours in an eight-hour workday, (4) sit with normal breaks for a total of about six hours in an eight-hour workday, and (5) push and/or pull without limitations. Dr. Griffith found no postural, manipulative, visual, communicative, or environment mental limitations. Dr. Griffith opined that Bedtka "does have a severe impairment which would currently be considered disabling. However, lack of complications noted, full recovery would be expected within 12 months."[5] Dr. Griffith concluded that:

> [Bedtka] is credible in his complaints. Currently, [Bedtka] is just 6 weeks out from a serious motorcycle accident that required surgical repair for multiple fractures. There has been no evidence of complication. It is supported that [Bedtka] is disabled at this time but he is expected to have a good recovery and be capable of this assessment within 12 months.

(Administrative Record at 389.)

In October 2011, Bedtka had a follow-up appointment with Dr. J.L. Marsh, M.D., the doctor who performed the surgeries on his left shoulder and left leg. Bedtka reported lack of motion and weakness in his left shoulder. Bedtka indicated that he could only lift 5 pounds. Bedtka also indicated that his ability to lift and carry groceries, climb stairs, walk more than one mile, and walk one block was "limited a little." Dr. Marsh sought further testing on Bedtka's shoulder before recommending any type of treatment.

In November 2011, Dr. Marsh operated on Bedtka a second time in order to remove hardware from his earlier left shoulder surgery. In December 2011, at a follow-up appointment, Mary Greve, PA-C, noted that Bedtka had a weak rotator cuff. She also noted that it was "unlikely" Bedtka would "get back to a high-level labor-type position before his 1 year mark."[6] Bedtka had another follow-up appointment in February 2012,

---

[5] *Id.* at 386.

[6] Administrative Record at 441.

8

where he continued to complain of weakness in his left shoulder. Upon examination, Dr. Marsh found that Bedtka's "motion is reasonable, but his strength is clearly weak."[7] Dr. Marsh referred Bedtka to Dr. James Nepola for consultation on his left rotator cuff.

In April 2012, Bedtka met with Dr. Nepola. He complained of a constant ache in his left shoulder. Bedtka also noted that he had been unable to return to work as a machine operator since his motorcycle accident in May 2011. Upon examination, Dr. Nepola diagnosed Bedtka with a rotator cuff injury. Specifically, Dr. Nepola found that Bedtka's rotator cuff tendon had become loose following his shoulder fracture. Dr. Nepola recommended surgery as treatment.

On August 29, 2012, Bedtka underwent rotator cuff surgery. Following surgery, Dr. Nepola restricted Bedtka from lifting, driving, and strenuous exercise for three months. Dr. Nepola also told Bedtka to keep his left arm in a sling at all times. On September 10, 2012, Dr. Nepola provided Bedtka with a medical excuse stating Bedtka "will be unable to use his left arm for a minimum of 3 months following surgery on 8/29/2012. He also has not been able to use his arm for [] the last 18 months due to his injury."[8]

## V. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Bedtka is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011); *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007). The five steps an ALJ must consider are:

---

[7] *Id.* at 448.

[8] Administrative Record at 459.

9

> (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.

*Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citing *Eichelberger*, 390 F.3d at 590); *Perks*, 687 F.3d at 1091-92 (discussing the five-step sequential evaluation process); *Medhaug v. Astrue*, 578 F.3d 805, 813-14 (8th Cir. 2009) (same); *see also* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In considering the steps in the five-step process, the ALJ:

> first determines if the claimant engaged in substantial gainful activity. If so, the claimant is not disabled. Second, the ALJ determines whether the claimant has a severe medical impairment that has lasted, or is expected to last, at least 12 months. Third, the ALJ considers the severity of the impairment, specifically whether it meets or equals one of the listed impairments. If the ALJ finds a severe impairment that meets the duration requirement, and meets or equals a listed impairment, then the claimant is disabled. However, the fourth step asks whether the claimant has the residual functional capacity to do past relevant work. If so, the claimant is not disabled. Fifth, the ALJ determines whether the claimant can perform other jobs in the economy. If so, the claimant is not disabled.

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant "bears the burden of demonstrating an inability to return to [his] or her past relevant work." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (citing *Steed v. Astrue*, 524 F.3d 872, 875 n.3 (8th Cir. 2008)). If the claimant meets this burden, the burden

10

shifts to the Commissioner at step five to demonstrate that "given [the claimant's] RFC [(residual functional capacity)], age, education, and work experience, there [are] a significant number of other jobs in the national economy that [the claimant] could perform." *Brock*, 674 F.3d at 1064 (citing *Ellis v. Barnhart*, 392 F.3d 988, 993 (8th Cir. 2005)). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. § 416.945. The ALJ bears the responsibility for determining "'a claimant's RFC based on all the relevant evidence including the medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Boettcher v. Astrue*, 652 F.3d 860, 867 (8th Cir. 2011) (quoting *Moore*, 572 F.3d at 523); 20 C.F.R. §§ 404.1545, 416.945.

The ALJ applied the first step of the analysis and determined that Bedtka had not engaged in substantial gainful activity since May 7, 2011. At the second step, the ALJ concluded from the medical evidence that Bedtka had the following severe impairments: history proximal humerus fracture and distal tibia and fibula fracture, status post left rotator cuff tear, and open-reduction and internal fixation of the left shoulder with hardware removal. At the third step, the ALJ found that Bedtka did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Bedtka's RFC as follows:

> [Bedtka] has the residual functional capacity to perform light work . . . in that [he] can occasionally crouch and kneel, but cannot climb ladders, ropes, scaffolding. [He] should avoid hazards, such as fast and dangerous machinery and work at unprotected heights and should not work in cold temperatures so needs to work indoors in a climate-controlled environment. He cannot use the non-dominant upper left extremity to reach overhead and can use the left upper extremity to reach other directions no more than occasionally.

(Administrative Record at 13.) Also at the fourth step, the ALJ determined that Bedtka could not perform any of his past relevant work. At the fifth step, the ALJ determined that

11

based on his age, education, previous work experience, and RFC, Bedtka could work at jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded that Bedtka was not disabled.

### B. Objections Raised By Claimant

Bedtka argues that the ALJ erred in two respects. First, Bedtka argues that the ALJ's RFC assessment is flawed because the assessment is inconsistent with the ability to perform light work. Second, Bedtka argues that the ALJ failed to properly consider and weigh the opinions of his treating doctor, Dr. Nepola.

#### 1. RFC Determination

Bedtka argues that the ALJ's RFC assessment is inconsistent with the ability to perform light work. Specifically, Bedtka argues that "[e]ven taking the RFC as outlined by the ALJ, [Bedtka] cannot perform light or sedentary work if he cannot reach overhead and can use his left upper extremity to reach other directions no more than occasionally."[9] Bedtka concludes that this matter should be reversed because the ALJ's RFC assessment is "not supported by the medical evidence and is not supported by substantial evidence as a whole."[10]

When an ALJ determines that a claimant is not disabled, he or she concludes that the claimant retains the residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Beckley*, 152 F.3d at 1059. The ALJ is responsible for assessing a claimant's RFC, and his or her assessment must be based on all of the relevant evidence. *Guilliams*, 393 F.3d at 803; *see also Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000) (same). Relevant evidence for determining a claimant's RFC includes "'medical records, observations of treating

---

[9] Bedtka's Brief (docket number 11) at 11.

[10] Bedtka's Brief (docket number 11) at 12.

12

physicians and others, and an individual's own description of his [or her] limitations.'" *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson*, 361 F.3d at 1070). While an ALJ must consider all of the relevant evidence when determining a claimant's RFC, "the RFC is ultimately a medical question that must find at least some support in the medical evidence of record." *Casey*, 503 F.3d at 697 (citing *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004)).

Bedtka correctly points out an inconsistency between the ALJ's RFC assessment and the ability to perform light work, that is, an individual limited to only occasional use of one extremity is incapable of sedentary and light work. The ALJ's discussion with the vocational expert at the administrative hearing is instructive on this issue. At the hearing, the ALJ provided the vocational expert with a hypothetical that is virtually identical to the RFC assessment found in his decision:

> [The hypothetical individual] is limited to performing light work, has some non-exertional limits, namely, can crouch and kneel only occasionally, cannot climb ladders, ropes, or scaffolds at all, and -- well, let's -- let me just say can't be exposed to hazards such as work at unprotected heights and cannot work in cold temperatures, so let's just say need to work indoors in a climate controlled environment. And then, I want you to assume that this worker cannot use the non-dominant left upper extremity to reach overhead at all and can use that extremity to reach in other directions no more than occasionally.

(Administrative Record at 63-64.[11]) In response to the ALJ's hypothetical, the vocational expert and ALJ had the following colloquy:

> Q: . . . Would there be an occupational base for an individual with those functional limits?
> A: There would not, your honor.

---

[11] *Compare* Administrative Record at 63-64 (hypothetical) to Administrative Record at 13 (ALJ's RFC assessment in ALJ's decision).

13

> Q: Okay, what would prevent that person from holding down some jobs?
> A: Well, basically that hypothetical restricts the person to the use of the non-dominant arm or hand to only an occasional basis. Under light exertional work, in order to perform -- or in order to perform light exertional work, the use of the arms, hands is needed on more than an occasional basis.
> Q: Okay, what if I changed that -- the question's -- sedentary work leaving everything else in place? Would there be an occupational base in that case?
> A: There would not.
> Q: Okay, what -- and so you're saying it's this use of the left hand would prevent all work? Is --
> A: Use of the left hand on only an occasional basis would limit sedentary and light exertional work, your honor.
> Q: Okay, well what about frequent use of the left? No[] overhead reaching, but frequent reaching otherwise using the left upper extremity?
> A: There would be an occupational base for that[.]
> Q: Okay, would that be at the sedentary or the light level?
> A: Light exertional level, your honor.

(Administrative Record at 64-65.) It is clear from the vocational expert's testimony that limiting Bedtka to only occasional use of his left arm would prevent him from light and sedentary work. Therefore, it begs the question how the ALJ could find that Bedtka is limited to occasional use of his left upper extremity, yet not find him disabled. Instead, the ALJ concluded that Bedtka was capable of light work, even though the vocational expert testified that limiting Bedtka to occasional use of his left arm would preclude him from light work. Under such circumstances, the Court believes that remand is necessary for the ALJ to address this inconsistency. *See Beckley*, 152 F.3d at 1059.

### 2. *Dr. Nepola's Opinions*

Bedtka argues that the ALJ failed to properly evaluate the opinions of his treating physician, Dr. Nepola. Specifically, Bedtka argues that the ALJ's reasons for discounting

14

Dr. Nepola's opinions are not supported by substantial evidence on the record. Bedtka concludes that if Dr. Nepola's opinions were properly evaluated and weighed by the ALJ, then he would have been found to be disabled.

An ALJ is required to "assess the record as a whole to determine whether treating physicians' opinions are inconsistent with substantial evidence on the record." *Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2)). The opinion of a treating physician:

> should not ordinarily be disregarded and is entitled to substantial weight. A treating physician's opinion regarding an applicant's impairment will be granted controlling weight, provided the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record.

*Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000) (citations omitted).

"Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole." *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). "The ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions." *Id.*; *see also Travis*, 477 F.3d at 1041 ("A physician's statement that is 'not supported by diagnoses based on objective evidence' will not support a finding of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). If the doctor's opinion is 'inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight.' *Id.*"); *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004) (an ALJ does not need to give controlling weight to a physician's RFC assessment if it is inconsistent with other substantial evidence in the record); *Cabrnoch v. Bowen*, 881 F.2d 561, 564 (8th Cir. 1989) (the resolution of conflicts of opinion among various treating and examining physicians is the proper function of an ALJ).

15

The regulations also require an ALJ to give "good reasons" for giving weight to statements provided by a treating physician. *See* 20 C.F.R. § 404.1527(d)(2). The regulations also require an ALJ to give "good reasons" for rejecting statements provided by a treating physician. *Id.*; *see also Tilley v. Astrue*, 580 F.3d 675, 680 (8th Cir. 2009) ("The regulations require the ALJ to 'always give good reasons' for the weight afforded to the treating source's opinion.") (citation omitted).

In his decision, the ALJ addressed the opinions of Dr. Nepola as follows:

> [Bedtka's] treating physician also submitted an opinion on his functioning. The undersigned gives this opinion little weight because it is clearly not supported by other substantial evidence in the record. The doctor writes his opinion that [Bedtka] has not been 'able to use his left arm' for the past 18 months and will not be able to do so for the three months following the date of the letter -- September 10, 2010.
>
> It is clear that the doctor's statement is not literally true. [Bedtka] uses his left arm for many varied activities and clearly has done so since the acute effects of the accident and surgery have ended. []He drives; attends school; and cares for his children. Even if the doctor attempted to describe his opinion that [Bedtka] would have some limits on his use of the arm, this vague and imprecise statement would be virtually useless in determining his residual functional capacity. Even so, the undersigned has included significant limits on the functioning of [Bedtka's] left arm in the residual functional capacity described above.

(Administrative Record at 17.)

In reviewing the ALJ's decision, the Court bears in mind that an ALJ has a duty to develop the record fully and fairly. *Cox*, 495 F.3d at 618. Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quotation omitted). Furthermore, if an ALJ rejects the opinions of a

16

treating physician, the regulations require that the ALJ give "good reasons" for rejecting those opinions. *See* 20 C.F.R. § 404.1527(d)(2). The Court finds that the ALJ has not fully met these requirements.

Here, the ALJ submits that Dr. Nepola's opinion that Bedtka is unable to use his left arm is false because he can drive a car, go to classes at a community college, and care for his children. The Court is unconvinced by this reasoning. The ALJ points to nothing in the record to support his assertions. In fact there is evidence in the record suggesting that while Bedtka is able to drive a car, he does so rarely, and for short periods of time.[12] Similarly, while Bedtka is able to care for his children, he receives significant help from the children's grandmother.[13] Additionally, while Bedtka attends community college, in the hopes of learning a vocation suitable for his limitations, there is evidence suggesting that it has been difficult for him to attend classes regularly due to difficulties with his left shoulder and left leg.[14] The ALJ does not address any of this evidence in his consideration of Dr. Nepola's opinion regarding Bedtka's left upper extremity. Furthermore, the ALJ's opinion that Dr. Nepola's opinion is "vague and imprecise" is more observation than reason, let alone good reason, for discounting Dr. Nepola's opinions. Moreover, as discussed in section *V.B.1*, the additional limitations the ALJ refers to in his RFC assessment indicate that Bedtka would be precluded from light work, which would be consistent with Dr. Nepola's opinion.

Therefore, the Court concludes the ALJ has failed to give "good reasons" for rejecting the opinions of Dr. Nepola. *See Tilley*, 580 F.3d at 680 ("The regulations require the ALJ to 'always give good reasons' for the weight afforded to the treating

---

[12] *See* Administrative Record at 43.

[13] *Id.* at 44-45.

[14] *Id.* at 58-63.

source's opinion."). The Court further finds that the ALJ failed in his duty to fully and fairly develop the record with regard to Dr. Nepola's opinions. Accordingly, the Court determines that this matter should be remanded for further consideration of Dr. Nepola's opinions. On remand, the ALJ shall provide clear reasons for accepting or rejecting Dr. Nepola's opinions and support his reasons with evidence from the record.

### C. Reversal or Remand

The scope of review of the Commissioner's final decision is set forth in 42 U.S.C. § 405(g) which provides in pertinent part:

> The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with our without remanding the cause for a rehearing.

42 U.S.C. § 405(g). The Eighth Circuit Court of Appeals has stated that:

> Where the total record is overwhelmingly in support of a finding of disability and the claimant has demonstrated his [or her] disability by medical evidence on the record as a whole, we find no need to remand.

*Gavin v. Heckler*, 811 F.2d 1195, 1201 (8th Cir. 1987); *see also Beeler v. Brown*, 833 F.2d 124, 127 (8th Cir. 1987) (finding reversal of denial of benefits was proper where "the total record overwhelmingly supports a finding of disability"); *Stephens v. Sec'y of Health, Educ., & Welfare*, 603 F.2d 36, 42 (8th Cir. 1979) (explaining that reversal of denial of benefits is justified where no substantial evidence exists to support a finding that the claimant is not disabled). In the present case, the Court concludes that the medical records as a whole do not "overwhelmingly support a finding of disability." *Beeler*, 833 F.2d at 127. Instead, the ALJ simply failed to: (1) address the inconsistency between his RFC assessment for Bedtka and the ability to perform light work; and (2) fully and fairly develop the record with regard to the opinions of Dr. Nepola. Accordingly, the Court finds that remand is appropriate.

## VI. CONCLUSION

The Court concludes that this matter should be remanded to the Commissioner for further proceedings. On remand, the ALJ must address the inconsistency between his RFC assessment for Bedtka and the ability to perform light work. The ALJ shall also provide clear reasons for accepting or rejecting Dr. Nepola's opinions and support his reasons with evidence from the record.

## VII. ORDER

For the foregoing reasons, it is hereby **ORDERED**:

This matter is **REVERSED** and **REMANDED** to the Commissioner of Social Security pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings as discussed herein.

DATED this 31st day of October, 2013.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA